**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**July 17, 2019**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2018AP25**

Cir. Ct. Nos.  2016PR33
2016PR34

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**
**DISTRICT II**

IN THE ESTATE OF VICTOR J. MUELLER IRREVOCABLE TRUST NUMBER ONE AND NUMBER TWO:

STEPHANIE MUELLER,

PETITIONER-APPELLANT,

V.

SUSAN KROHN,

TRUSTEE-RESPONDENT,

UNIVERSITY OF WISCONSIN FOUNDATION,

BENEFICIARY-RESPONDENT.

APPEAL from orders of the circuit court for Fond du Lac County: RICHARD J. NUSS, Judge.  *Affirmed*.

Before Neubauer, C.J., Gundrum and Hagedorn, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.  This matter arises from the administration of two trusts established by decedent Victor Mueller.  Stephanie Mueller, Victor's daughter and a beneficiary of both trusts, appeals from orders dismissing her petition for judicial intervention and awarding attorneys' fees to both the trustee, Susan Krohn, and another beneficiary, the University of Wisconsin Foundation. For the reasons that follow, we affirm.

## BACKGROUND

¶2      Victor, a successful businessman, retained Attorney Louis Andrew and established two separate but interrelated trusts:  the Victor J. Mueller Irrevocable Trust Number One (trust one), and the Victor J. Mueller Irrevocable Trust Number Two (trust two).  Victor placed two working farm properties into trust one and designated Stephanie its sole income beneficiary.  Upon Stephanie's death, the residue of trust one will go to the UW Foundation to fund scholarships for students entering careers in wildlife management.

¶3      Trust two owns all of Victor's other assets, including real estate, personal property, a significant inventory of gemstones, and various investments. Trust two provided specific bequests to certain individuals.  Stephanie was bequeathed $500,000 and Victor's tangible personal property.  After the bequests in trust two are distributed and its gemstones liquidated, the remainder will pour into trust one and be administered in accordance with trust one's terms.

¶4   Victor died in 2013 and, pursuant to his instructions, Krohn became successor trustee for both trusts. Krohn was Victor's longtime employee; at one time they were engaged to be married. Victor knew the administration of his trust would be complicated and provided a written acknowledgment of this in a "note to all interested parties" contained in the trust documents. As a result, Victor wanted Krohn to continue receiving her prior wage.

¶5   In administering trust one, Krohn continued Victor's contracts with the farm operators and hunters who had farmed and hunted the land for years. The farms in trust one paid Stephanie between $58,000 and $69,700 in the years 2014 through 2016.

¶6   With regard to trust two, Krohn liquidated most of the assets and distributed about fifty percent of the bequests. Stephanie has received $250,000— half of her bequest. Because the estate tax return is under audit, Krohn has deemed it necessary to reserve cash in trust two in case additional tax is owed.

¶7   Stephanie filed a petition for judicial intervention in the circuit court alleging that Krohn owed damages and should be removed as trustee due to various purported breaches of fiduciary duty. Krohn and the UW Foundation filed motions for summary judgment seeking to dismiss Stephanie's petition. After extensive briefing and following a hearing, the circuit court dismissed all of Stephanie's claims on summary judgment. Pursuant to their motions, the circuit court awarded attorneys' fees to Krohn and the UW Foundation.

**DISCUSSION**

¶8   On appeal, Stephanie maintains that Krohn breached her fiduciary duty in myriad ways and asserts that the circuit court improperly granted summary

judgment in favor of Krohn and the UW Foundation. We review a circuit court's decision to grant summary judgment de novo, applying the same methodology as the circuit court. ***Fifer v. Dix***, 2000 WI App 66, ¶5, 234 Wis. 2d 117, 608 N.W.2d 740. Summary judgment is granted if there are no genuine issues of material fact and the moving party is entitled to judgmeet as a matter of law. WIS. STAT. § 802.08(2) (2017-18).[1]

*As a matter of law, Krohn's decision to retain the farms in trust one is not a breach of fiduciary duty.*

¶9　Stephanie argues that Krohn's administration of trust one, in particular her decision not to sell all or part of the farm properties, constitutes a breach of fiduciary duty. According to Stephanie, the farms are underproductive and Krohn has a duty to sell or convert the unproductive portions under the prudent investor rule which, when applicable, can require diversification in investments.

¶10　Wisconsin recognizes a settlor's right to create a trust where the prudent investor rule does not apply. *See* WIS. STAT. § 881.01(2)(b) ("The prudent investor rule, a default rule, may be expanded, restricted, eliminated or otherwise altered by the provisions of a will, trust or court order."). Krohn argues that the language Victor chose to include in trust one expressly overrides the prudent investor rule. We agree.

¶11　Trust one provides that the trustee has the power

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

> to retain original investments indefinitely (without any duty of diversification and without regard to risk of loss resulting from lack of diversification) and to invest and reinvest, as the trustee sees fit and irrespective of statutes or rules of law governing the investment of trust funds, including the right to invest in common trust funds.

This language is virtually identical to that in *French v. Wachovia, NA*, 722 F.3d 1079 (7th Cir. 2013), which was held to override the prudent investor rule. We conclude that the language in trust one displaces the prudent investor rule and requires Krohn to make investment decisions in good faith.

¶12 Stephanie argues that the circuit court erred when, in granting summary judgment, it added: "The Trustee shall retain the farm properties in Trust One during [Stephanie's] lifetime." The circuit court made this declaration in the context of its findings concerning Stephanie's litigiousness and Krohn's articulated desire not to sell the farm properties while Stephanie was alive and receiving income from trust one. As such, we construe the court's statement as an affirmation of Krohn's intent to retain the farm properties during Stephanie's lifetime.[2]

¶13 In sum, based on the language Victor chose to include in trust one, the prudent investor rule does not apply, and Krohn is authorized to retain the farms throughout Stephanie's lifetime, subject only to the obligation of good faith. Based on the undisputed evidence, there is no genuine issue of material fact that would entitle Stephanie to a trial on whether Krohn's decision to retain the farms was made in bad faith.

---

[2] We take no position on whether the circuit court's order would actually preclude the trustee from selling the farm properties during Stephanie's lifetime.

*As a matter of law, Krohn's postarbitration refusal to give Stephanie additional items of Victor's property is not a breach of fiduciary duty.*

¶14 Stephanie was bequeathed Victor's tangible personal property. The appraisal of Victor's property was 767 pages. Stephanie initially asked for and received about 360 items. Thereafter, she requested additional property but the UW Foundation objected on grounds that the items sought did not fall within the trust's definition of tangible personal property. Stephanie and the UW Foundation agreed to submit their dispute to binding arbitration. The arbitration agreement signed by both parties stated:

> Stephanie represents that the list of Disputed Property … is a complete and exhaustive list of all remaining tangible personal property that she would like to receive under the Trust. Stephanie represents that she will not request or make a claim for any other tangible personal property in the arbitration or otherwise.… As an inducement to the Trustee to proceed with this arbitration proceeding, Stephanie and UW Foundation represent and warrant to the Trustee … that they will make no claim for or against any tangible personal property except in the arbitration proceeding.

Stephanie prevailed and received the disputed property.

¶15 Long after the arbitration, Stephanie asked Krohn to turn over additional items of property never before requested. According to Stephanie, the items were not on the list of "Disputed Property" because she did not know about them at the time of arbitration. Krohn declined to give Stephanie the additional property based on the terms of the arbitration agreement, including Stephanie's representation that she would not make further requests and that arbitration would finally settle matters concerning the distribution of Victor's personal property.

¶16     As a matter of law, Krohn did not breach her fiduciary duty by declining to fulfill Stephanie's postarbitration request for extra property.  Even taking as true Stephanie's assertion that the new items were not clearly listed on the property appraisal, summary judgment was proper.  Krohn owes a duty of impartiality to both Stephanie and the UW Foundation.  *See* WIS. STAT. § 701.0803.  Giving Stephanie more property after the arbitration would have been contrary to the UW Foundation's interest as residual beneficiary.  Thus, Krohn had to decide whether to rely on the arbitration agreement, or to ignore it and subject herself to a breach claim by the UW Foundation.  Krohn's reliance on the arbitration agreement's explicit language that Stephanie represented and warranted she would not demand any other tangible personal property provides no evidence of bad faith.

*As a matter of law, Krohn's decisions about distributing the specific bequests and liquidating the gemstones in trust two comported with the language of the trust documents and did not constitute a breach of fiduciary duty.*

¶17     It is undisputed that Krohn has not paid out the full amount of Victor's specific bequests, including the remaining $250,000 bequeathed to Stephanie, and that she has not liquidated all of the gemstones in trust two. According to Stephanie, Krohn is in breach.

¶18     Except for the farms in trust one, trust two contains all of Victor's assets.  The trust requires the payment of taxes before specific bequests:

> A. The Trustee shall pay from the trust estate … all debts, expenses of administration, and death taxes (estate, inheritance, and like taxes, including interest and penalties …) that are payable as a result of my death.
>
> ….

J. The trust assets remaining after the foregoing payments and distributions are hereinafter referred to in this instrument as the net trust estate. The trustee shall distribute the net trust estate as follows:

> 1. The following cash distributions shall be made as soon as practical after my death taking into consideration that tax, debt and other matters may need to be paid first as the trust may be short of cash at that time:

[specific bequests]

¶19 Stephanie argues that the trust's language requires Krohn to pay the specific bequests unless the trusts are short of cash and that because there is sufficient cash, Krohn is in breach. We disagree. Until the final amount of Victor's estate tax liability is determined, the taxes cannot be paid in full; payment of taxes is a prerequisite to payment of the specific bequests.

¶20 Stephanie next argues that Krohn breached her fiduciary duty by not liquidating the remaining gemstones in a specific manner. We conclude that Krohn's attempts to liquidate the gemstone inventory are reasonable and Stephanie has not shown any factual basis for a breach. The language of the trust gives the trustee the power "to take any action with respect to conserving or realizing upon the value of any trust property." As such, the trustee has discretion as to the method of liquidating the gemstones. Additionally, the trust specifically allows the trustee "to retain all or any part of the original assets constituting the trust." While Krohn intends to liquidate the remaining gemstones for fair value, Stephanie's claim that Krohn is not acting quickly enough is contrary to the trust's plain language permitting indefinite retention of the gemstones. Krohn has acted within the discretion afforded her by the trust.

*Krohn's acceptance of the trustee fee is not a breach of fiduciary duty.*

¶21    Stephanie complains that Krohn breached her fiduciary duty by "awarding herself a trustee fee in a manner that did not adhere to the Trusts' terms."  Both trusts provide:

> The trustee shall be entitled to such reasonable compensation as from time to time may be agreed upon in advance and in writing with me or with the majority of the then living adult beneficiaries … or if no such agreement exists and cannot be reached, then in accordance with reasonable and customary fees for any such trust as a bank trust department might charge.

According to Stephanie, Krohn made "no effort whatsoever to reach an agreement with Stephanie" concerning the trustee fee.

¶22    However, in March 2014, less than three months after Victor's death, Attorney Andrew sent Stephanie a "Notice Regarding Trust" that described the trustee fee in detail.    Stephanie's lawyer responded with a letter acknowledging the contents of the notice and not objecting to the fee:

> In connection with item 11 of the Notice Regarding Trust, please confirm my understanding to be correct that Susan Krohn will be receiving trustee compensation in the amount of $53,500.20 (subject to a 3% increase effective 1/1/2014) for the period it takes to complete the "intense administration" of the trusts/estate, which you estimate to be approximately 2 years.

Andrew sent a responsive letter.    Stephanie did not object to Krohn's compensation until she commenced the April 2016 petition underlying this appeal.

¶23    Stephanie's objection to the trustee fee is barred by the statute of limitations in WIS. STAT. § 701.1005, which provides that a claim must be brought within one year of the date the beneficiary "was sent a report that adequately

disclosed the existence of a potential claim for breach of trust." "[A] report adequately discloses the existence of a potential claim for breach of trust if it provides sufficient information so that the beneficiary or representative knows of the potential claim or should have inquired into its existence." Sec. 701.1005(2).

¶24    We reject Stephanie's contention that the notice is not a "report" sufficient to trigger the statute of limitations because it does not include the contents of an unrelated annual report under WIS. STAT. § 701.0813(3).  Contrary to Stephanie's assertion, § 701.0813(3) does not contain an overriding definition of "report" applicable to all provisions of the trust code.  Pursuant to WIS. STAT. § 701.1005, a report triggers the one-year period if it "adequately disclosed the existence of a potential claim for breach of trust."  We are not persuaded that a report under § 701.1005 must contain the contents set forth in § 701.0813(3).

*Krohn has not otherwise breached her fiduciary duty.*

¶25    Stephanie complains that Krohn breached her fiduciary duty as a matter of law by (1) continuing the farm contracts Victor previously negotiated with Krohn's brother and nephew, (2) employing her family members to help clean and sell property, and (3) continuing the hunting leases Victor granted to members of Krohn's family.  Stephanie claims that these practices are per se breaches because they involve self-dealing and conflicts of interest.

¶26    With regard to the claims of breach predicated on the farming contracts and Krohn's having employed her daughter and granddaughter to help clean and organize estate assets for sale, we conclude that they are time barred by WIS. STAT. § 701.1005.  The notice and letters provided by Andrew no later than April 2014 explained the farm leases and disclosed the tenants to Stephanie's lawyer.  An estate tax return provided to Stephanie on April 1, 2015, showed the

amounts paid to Krohn's daughter and granddaughter as compensation for helping Krohn prepare the estate. As to both, Stephanie's April 29, 2016 action was filed more than one year after she "was sent a report that adequately disclosed the existence of a potential claim for breach of trust." *Id.*

¶27 As far as Stephanie's claim concerning Krohn's leasing of the land for hunting purposes to her family, there is no breach. To the extent she alleges a violation of WIS. STAT. § 701.0802(2), the transaction was authorized by the terms of the trust, *see* § 701.0802(2)(a), and also involves a contract entered into by the trustee before Krohn became trustee, *see* § 701.0802(2)(e). The undisputed facts show that Victor entered into the hunting arrangement with Krohn and members of her family before his death.[3]

*The circuit court properly exercised its discretion in awarding attorneys' fees.*

¶28 WISCONSIN STAT. § 701.1004(1) specifically authorizes the circuit court to award "costs and expenses, including reasonable attorney fees, to any party, to be paid by another party or from the trust." The amount of fees is left to the circuit court's discretion. *Kolupar v. Wilde Pontiac Cadillac, Inc.*, 2004 WI 112, ¶22, 275 Wis. 2d 1, 683 N.W.2d 58.

¶29 Here, counsel for Krohn and the UW Foundation submitted requests for the determination and award of reasonable attorneys' fees and costs. Both

---

[3] These preexisting arrangements provide an alternate reason for our conclusion that the farming contracts did not constitute a fiduciary breach. It is undisputed that Victor negotiated the farm contracts with Krohn's brother and nephew more than twenty-five years ago. He knew the farm operators were related to Krohn when he selected her as trustee.

requests included the affidavits of counsel and specifically addressed the factors in WIS. STAT. § 814.045, demonstrating how each statutory factor supported the reasonableness of the requested fees. Stephanie objected, asserting that the rates were unreasonable for attorneys in the area and that certain hours were duplicative. Krohn and the UW Foundation each filed a response. Following a review of the extensive filings and after a hearing, the circuit court awarded actual attorneys' fees and expenses of $324,469.64, and ordered the fees paid from the income of trust one.

¶30 The circuit court's determination was supported by "a logical rationale based on the appropriate legal principles and facts of record." *Anderson v. MSI Preferred Ins. Co.*, 2005 WI 62, ¶19, 281 Wis. 2d 66, 697 N.W.2d 73 (citation omitted). In addition to its on-the-record explanation, the court adopted the analyses in counsel's affidavits. In providing its rationale, the circuit court was not required to read the affidavits into the record. Further, the record before the circuit court amply supports its discretionary decision. *See Miller v. Hanover Ins. Co.*, 2010 WI 75, ¶¶30, 47, 326 Wis. 2d 640, 785 N.W.2d 493 (reviewing court will search the record for facts supporting the circuit court's discretionary determination).

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

12