IN RE the COMMITMENT OF Carl Cornelius GILBERT, Jr.:

STATE of Wisconsin, Petitioner-Respondent,

v.

Carl Cornelius GILBERT, Jr.,
Respondent-Appellant.†

IN RE the COMMITMENT OF Price T. HUNT:

STATE of Wisconsin, Petitioner-Respondent,

v.

Price T. HUNT, Respondent-Appellant.†

Court of Appeals

*Nos. 2010AP594 & 2010AP1155.*
*Submitted on briefs February 8, 2011.—Decided April 12, 2011.*

2011 WI App 61

(Also reported in 798 N.W.2d 889.)

† Petitions for Review filed.

157

158

On behalf of the respondent-appellant Carl Cornelius Gilbert, Jr., the cause was submitted on the briefs of *William J. Tyroler*, assistant state public defender of Milwaukee.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general and *Warren D. Weinstein*, assistant attorney general.

159

On behalf of the respondent-appellant Price T. Hunt, the cause was submitted on the briefs of *Michael J. Gonring, Leah Stoecker, Eric J. Van Schyndle* and *Allison E. Cimpl-Wiemer* of *Quarles & Brady LLP* of Milwaukee.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *J.B. Van Hollen,* attorney general and *Warren D. Weinstein,* assistant attorney general.

Before Curley, P.J., Fine and Kessler, JJ.

¶ 1. KESSLER, J.   Carl Cornelius Gilbert, Jr. and Price T. Hunt appeal orders of commitment pursuant to WIS. STAT. § 980.06[2] entered against each of them, and Gilbert also appeals denial of his WIS. STAT. § 809.30 postconviction motion. These appeals have been consolidated because they raise the same issue, which is one of first impression. Both appellants argue that dismissal of a WIS. STAT. ch. 980 commitment proceeding is required when the subject of the petition is placed in a facility operated by the Department of Corrections (DOC) before a commitment order is made, and is therefore transferred to DOC custody, rather than being transferred immediately to the custody of the Department of Health Services (DHS),[3] as required by WIS. STAT. §§ 980.06 and 980.065. Because we conclude that §§ 980.06 and 980.065, when construed in the

---

[2] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

[3] On July 1, 2008, the Department of Health and Family Services, in all matters material to these proceedings, became known as the Department of Health Services. *See* 2007 Wis. Act 20, § 9121(6)(a)-(b). We use DHS to identify both the Department of Health and Family Services and the Department of Health Services.

context of ch. 980 as a whole, permit a commitment order in the circumstances that occurred here, we affirm.

¶ 2. The facts in the two cases vary slightly, but are set forth separately for completeness. However, we see no difference between the underlying facts material to the issue raised here.

### Gilbert Facts

¶ 3. Gilbert was in prison because of sequential convictions, one of which was for a predicate offense under WIS. STAT. ch. 980.[4] On December 4, 2006, before Gilbert's mandatory release on the predicate offense, the State filed a petition seeking his commitment under ch. 980 (2005–06). That same day, the circuit court reviewed the petition as required by WIS. STAT. § 980.04(1) (2005–06), found probable cause, and ordered Gilbert detained by the DOC and transferred "to a detention facility approved by the [DHS]."

¶ 4. Gilbert was placed on parole the next day by the DOC and transferred to the Wisconsin Resource Center.[5] After a hearing on March 22, 2007,[6] the court found probable cause to believe Gilbert was sexually violent and ordered him transferred for evaluation to the Wisconsin Resource Center "or such other authorized institution as may be determined by the [DHS]."

---

[4] Gilbert was convicted of second-degree sexual assault, an offense included in the definition of "sexually violent offense." *See* WIS. STAT. § 980.01(6).

[5] All parties appear to agree that the Wisconsin Resource Center is a facility operated by DHS.

[6] The date above the court's signature on the order is March 22, 2006. The date on the first page of the order recites that the matter was heard on March 22, 2007. The transcript of the hearing identifies the hearing date as March 22, 2007.

¶ 5. While detained for evaluation, Gilbert violated his parole. He was formally revoked and returned to the custody of the DOC. Subsequently, Gilbert was again released on parole. Gilbert violated this parole and was again revoked. Gilbert was again returned to the custody of the DOC. Gilbert was placed at the Milwaukee Secure Detention Facility on November 29, 2007 for the remainder of the WIS. STAT. ch. 980 commitment proceeding. On February 7, 2008, a jury found that Gilbert was a sexually violent person, and the court ordered him committed to the DHS "for control, care and treatment until such time as [he] is no longer a sexually violent person." The court also ordered commitment "to institutional care in a secure mental health facility."

¶ 6. Gilbert brought a postconviction motion in which he asserted that the commitment proceeding became moot when his parole was revoked because the relief the State sought—his commitment to the custody of the DHS pursuant to WIS. STAT. §§ 980.06 and 980.065 —was not possible because he was in the custody of the DOC. Thus, Gilbert concludes, the petition should have been dismissed. The circuit court denied the motion and Gilbert appeals.[7]

### Hunt Facts

¶ 7. Hunt was convicted of two offenses in 2003, one of which was a predicate offense under WIS. STAT. § 980.01(6)(b) (2003–04). Hunt was sentenced to ten years of imprisonment, comprised of five years of initial confinement and five years of extended supervision for the predicate offense, and to a concurrent nine-month term on the other offense. Before his September 4, 2007

---

[7] Gilbert was released from prison to DHS custody on August 27, 2010.

release from prison on extended supervision, the State filed a petition for his commitment under Wis. Stat. ch. 980 (2007–08). Pursuant to Wis. Stat. § 980.04(1) (2007–08), the circuit court found there was probable cause to believe that Hunt was eligible for a ch. 980 commitment. Under § 980.04(1) (2007–08), the court ordered Hunt transferred to a detention facility approved by the DHS and ordered a probable cause hearing.

¶ 8. Hunt was transferred to DHS custody at the Wisconsin Resource Center when he was released to extended supervision by the DOC. Thereafter, on October 16, 2007, the circuit court conducted the probable cause hearing, and found probable cause to believe that Hunt was a sexually violent person within the meaning of Wis. Stat. § 980.01(1) (2007–08). The circuit court ordered Hunt transferred to the Wisconsin Resource Center for evaluation as required by § 980.04(3) (2007–08).

¶ 9. While in the custody of the DHS, and while the State's Wis. Stat. ch. 980 petition was pending, Hunt was disruptive, violent and abusive towards a staff member at the Wisconsin Resource Center. On May 29, 2008, an administrative law judge revoked Hunt's extended supervision and on August 21, 2008, the circuit court ordered Hunt reconfined to prison for two years. Hunt's presumptive release date was on or about August 21, 2010. Hunt was transferred to the Racine Correctional Institution.

¶ 10. Hunt moved to dismiss the commitment petition or, in the alternative, to be transferred to "an approved DHS facility." The circuit court denied both the motion to dismiss and the request to be transferred. Hunt remained at the Racine Correctional Institution during the remaining steps in the commitment proceed-

ings. After a trial to the court during his reconfinement period, Hunt was found to be a sexually violent person and was ordered committed. The court explained that under the commitment order, Hunt was to be transferred to a DHS facility *after* completing his reconfinement period.[8] Hunt appeals.

## DISCUSSION

¶ 11. Both Gilbert and Hunt argue that the State's WIS. STAT. ch. 980 petitions should have been dismissed because Gilbert's and Hunt's return to DOC custody eliminated the possibility of placing them in immediate DHS custody, as required by WIS. STAT. § 980.06. They both also argue that once they were returned to DOC custody, their commitment proceedings became moot because the orders would have no practical effect, as neither Gilbert nor Hunt could be subject to the immediate and exclusive confinement of the DHS. Therefore, the question to be decided is whether ch. 980 requires dismissal of a pending commitment petition when the person who is the subject of the petition is incarcerated because of a new sentence or a parole/extended supervision revocation. Because we conclude that various provisions of ch. 980 illustrate the legislature's intent that commitment proceedings can occur while the subject of the proceedings is incarcerated, we affirm.[9]

---

[8] Hunt explains that he remained in DOC custody at the Racine Correctional Institution until the end of his extended supervision on March 30, 2010 when he was transferred to DHS control at the Wisconsin Resource Center. The State does not dispute this representation.

[9] To the extent the appellants make constitutional arguments, we conclude that their arguments rely entirely on their interpretations of WIS. STAT. ch. 980 and are not developed

## A.  Standard of Review.

¶ 12.  Statutory interpretation begins with the language of the statute. *State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. "[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶ 46. The purpose of statutory interpretation is to give the statute its "full, proper, and intended effect." *Id.*, ¶ 44. "We begin with the statute's language because it is assumed that the legislature's intent is expressed in the words it used. When statutory language includes technical or specially-defined words or phrases [they] are given their technical or special definitional meaning." *Village of Cross Plains v. Haanstad*, 2006 WI 16, ¶ 9, 288 Wis. 2d 573, 709 N.W.2d 447 (citations omitted; one set of quotation marks omitted; brackets in *Haanstad*). We review independently the application of the statutes to undisputed facts. *See State ex rel. Rupinski v. Smith*, 2007 WI App 4, ¶ 13, 297 Wis. 2d 749, 728 N.W.2d 1. This "requires us to engage in statutory interpretation which we also review independently." *Id.* We independently determine whether a matter is moot. *See PRN Assocs. LLC v. DOA*, 2009 WI 53, ¶ 25, 317 Wis. 2d 656, 766 N.W.2d 559.

## B.  The statutes describing a commitment order.

¶ 13.  The specific provisions in WIS. STAT. ch. 980 that the appellants primarily rely upon are WIS. STAT.

beyond their interpretations of ch. 980. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (We need not address undeveloped arguments.).

165

§§ 980.06 and 980.065, which describe the ultimate order for commitment. WISCONSIN STAT. § 980.06 provides:

> If a court or jury determines that the person who is the subject of a petition under s. 980.02 is a sexually violent person, the court *shall order the person to be committed to the custody of the department for control, care and treatment* until such time as the person is no longer a sexually violent person. A commitment order under this section shall specify that the person be placed in institutional care.

(Emphasis added.) WISCONSIN STAT. § 980.065, as material to this appeal, provides:

> **(1m)** The department shall place a person committed under s. 980.06 at the secure mental health facility established under s. 46.055, the Wisconsin resource center established under s. 46.056 or a secure mental health unit or *facility provided by the department of corrections under sub. (2).*
>
> . . . .
>
> **(2)** *The department may contract with the department of corrections for the provision of a secure mental health unit or facility for persons committed under s. 980.06.* The department shall operate a secure mental health unit or facility provided by the department of corrections under this subsection and shall promulgate rules governing the custody and discipline of persons placed by the department in the secure mental health unit or facility provided by the department of corrections under this subsection.

(Emphasis added.)

¶ 14.  Appellants argue that the word "shall" in the referenced sections requires the subject of the petition to be immediately transferred to the custody of the

166

DHS when the commitment order is issued. Because each appellant was in the custody of the DOC at the time the commitment orders were issued, the appellants conclude that the commitment orders were incapable of being executed and therefore the proceedings should have been dismissed as moot. We disagree.

¶ 15. WISCONSIN STAT. § 980.06 provides that the "court shall order the person to be committed to the custody of the [DHS] for control, care and treatment." However, WIS. STAT. § 980.065(1m) describes alternatives that the DHS has for physical placement, including "a secure mental health unit or facility provided by the department of corrections under sub. (2)." WISCONSIN STAT. § 980.065(2) allows the DHS to "contract with the department of corrections for the provision of a secure mental health unit or facility for persons committed under s. 980.06." The statute allows the DHS to house committed persons in a DOC secure facility or a secure mental health unit. Thus, the specific statutes on which appellants rely, by their plain language, do not support the appellants' inferences as to legislative intent.

## C. The statutory context of the commitment process.

¶ 16. The language of WIS. STAT. §§ 980.06 and 980.065 cannot be read in isolation from related provisions of WIS. STAT. ch. 980. "The context in which a statute appears is relevant to its plain meaning[.]" *State v. Rachel*, 2010 WI App 60, ¶ 7, 324 Wis. 2d 465, 782 N.W.2d 443. Statutory language is to be interpreted in the context in which it is used and as a part of a whole, rather than in isolation. *See Kalal*, 271 Wis. 2d 633, ¶ 46. The language is to be interpreted " 'in relation to the language of surrounding or closely-related statutes[] and reasonably, to avoid absurd or unreasonable

results.' " *State v. Tomaszewski*, 2010 WI App 51, ¶ 9, 324 Wis. 2d 433, 782 N.W.2d 725 (citation omitted). "While it is true that statutory interpretation begins with the language of the statute, it is also well established that courts must not look at a single, isolated sentence or portion of a sentence, but at the role of the relevant language in the entire statute." *Alberte v. Anew Health Care Servs. Inc.*, 2000 WI 7, ¶ 10, 232 Wis. 2d 587, 605 N.W.2d 515.

¶ 17.   Numerous provisions of Wis. Stat. ch. 980 illustrate the legislature's intent that commitment proceedings can occur while the subject of the proceedings is incarcerated. A petition alleging that a person is sexually violent must be filed *before* the person is "released or discharged" from custody or control of the DOC. *See* Wis. Stat. § 980.02(1m). If the court determines that the petition establishes probable cause to believe a person is sexually violent, it must issue an order that the person "shall be held in a facility *approved* by the [DHS]." *See* Wis. Stat. § 980.04(1) (emphasis added). That order "remains in effect until the petition is dismissed after a hearing under sub. (3) or after a trial under s. 980.05(5) or until the effective date of a commitment order under s. 980.06, whichever is applicable." Wis. Stat. § 980.04(1).[10] The legislature has

---

[10] The full text of Wis. Stat. § 980.04(1) provides:

Upon the filing of a petition under s. 980.02, the court shall review the petition to determine whether to issue an order for detention of the person who is the subject of the petition. The person shall be detained only if there is probable cause to believe that the person is eligible for commitment under s. 980.05(5). *A person detained* under this subsection *shall be held in a facility approved by the department. If the person is serving a sentence of imprisonment,* is in a juvenile correctional facility, as defined in s. 938.02(10p), or a secured residential care center for children and youth, as defined in s. 938.02(15g), or is committed to institutional care, and the

created a physical placement system which allows the DHS the flexibility to use detention facilities operated by others, but "approved by" the DHS during a ch. 980 commitment proceeding. Nothing in the language of any of these sections suggests that the legislature intended that only DHS operated facilities could be used while the commitment process played out.

### D.  Statutory treatment of post-petition reincarceration.

¶ 18.  The legislature recognized that a person subject to a commitment petition might be in custody for reasons other than the predicate offense and that such custody is compatible with an ongoing WIS. STAT. ch. 980 commitment proceeding. WISCONSIN STAT. § 980.04(2)(b)[11] *requires* a probable cause hearing within thirty days of filing the petition, but permits extensions of that time for a variety of reasons. *See id.* By contrast, WIS. STAT. § 980.04(2)(b)2. allows, but does not require, the court to hold the hearing within ten days after the person is released from custody, unless the court extends the time for a variety of reasons set out in the statute. *See id.* ("If the person . . . is in custody . . . and the probable cause hearing *will* be held

court orders detention under this subsection, *the court shall order that the person be transferred to a detention facility approved by the department. A detention order under this subsection remains in effect until the petition is dismissed* after a hearing under sub. (3) *or after a trial* under s. 980.05(5) *or until the effective date of a commitment order under s. 980.06, whichever is applicable.*

(Emphasis added.)

[11] Wisconsin Stat. § 980.04(2)(b)1. provides:

Except as provided in subd. 2., the court shall hold the probable cause hearing within 30 days . . . after the filing of the petition, unless that time is extended by the court for good cause shown upon its own motion, the motion of any party, or the stipulation of the parties.

after the date on which the person is scheduled to be released or discharged.") (emphasis added).[12] This section clearly anticipates the continuation of ch. 980 proceedings despite a person being in DOC custody. If DOC custody required dismissal of the commitment proceedings, § 980.04(2)(b)2. would never be applicable to any situation. It would be surplusage. *See Mueller v. McMillian Warner Ins. Co.*, 2006 WI 54, ¶ 27, 290 Wis. 2d 571, 714 N.W.2d 183 (" 'A statute should be construed so that no word or clause shall be rendered surplusage and every word if possible should be given effect.' ") (citation omitted). Further, WIS. STAT. § 980.07, which provides for periodic reexamination of a person committed under WIS. STAT. § 980.06, specifically suspends the reexamination when the person is incarcerated because of a new criminal charge, conviction or parole revocation. *See* WIS. STAT. § 980.07(6m).[13] The wide discretion given to the trial court regarding the

---

[12] The full text of WIS. STAT. § 980.04(2)(b)2. provides:

If the person named in the petition is in custody under a sentence, dispositional order, or commitment and the probable cause hearing will be held after the date on which the person is scheduled to be released or discharged from the sentence, dispositional order, or commitment, the probable cause hearing under par. (a) shall be held no later than 10 days after the person's scheduled release or discharge date, excluding Saturdays, Sundays, and legal holidays, unless that time is extended by the court for good cause shown upon its own motion, the motion of any party, or the stipulation of the parties.

[13] WISCONSIN STAT. § 980.07(6m) provides:

If a person committed under s. 980.06 is incarcerated at a county jail, state correctional institution, or federal correction institution for a new criminal charge or conviction or because his or her parole was revoked, any reporting requirement under sub. (1), (4), or (6) does not apply during the incarceration period . . . The schedule for reporting established under sub. (1) shall resume upon the release of the person.

timing of the probable cause hearing together with the evident recognition that the subject of the petition might be incarcerated during the commitment proceedings, compels our conclusion that the legislature did not intend for commitment proceedings to stop because the person subject to the petition is returned to DOC custody.

¶ 19.   While the legislature clearly recognized the possibility of commitment proceedings occurring while a person is in DOC custody, case law has also addressed the issue. In *State v. Szulczewski*, 216 Wis. 2d 495, 574 N.W.2d 660 (1998), our supreme court reconciled two statutory provisions, each of which mandated simultaneous custody of Szulczewski. He had been committed to the Department of Health and Social Services under WIS. STAT. ch. 971, which required commitment " 'for custody, care and treatment until discharged.' " *Szulczewski*, 216 Wis. 2d at 499 (citation omitted). However, while committed under ch. 971, Szulczewski was convicted for assaulting another patient and was sentenced to prison. *Szulczewski*, 216 Wis. 2d at 498. WISCONSIN STAT. § 973.15 states that all sentences begin at noon on the day the sentence is imposed. *Szulczewski*, 216 Wis. 2d at 500. WISCONSIN STAT. § 973.15(8)(a) also authorizes a court to stay a sentence "for legal cause." *Szulczewski*, 216 Wis. 2d at 500–01. Adopting a construction to harmonize the conflict between the statutes, the court concluded that "the statutes authorize the circuit court to make a reasoned determination about imposing or staying a prison sentence on the basis of the facts of each case." *Id.* at 505.

¶ 20.   Relying on our supreme court's harmonization of seemingly conflicting statutes in *Szulczewski*, we concluded, in *State v. White*, 2000 WI App 147, ¶ 9, 237

Wis. 2d 699, 615 N.W.2d 667, that the purposes of WIS. STAT. ch. 980 are not significantly different from the purposes of WIS. STAT. ch. 971:

> [T]he principal purposes of WIS. STAT. ch. 980 are clear: the protection of the public and the treatment of convicted sex offenders who are at a high risk to reoffend in order to reduce the likelihood that they will engage in such conduct in the future. These purposes are not significantly different from those underlying the NGI statute: to treat the NGI acquittee's mental illness and to protect the acquittee and society from the acquittee's potential dangerousness. Thus, because of the close correspondence between the statutes and legislative purposes at issue in *Szulczewski* and those in [a ch. 980 commitment], the supreme court's rationale in *Szulczewski* applies with equal force here.

(Internal citations, quotation marks and footnote omitted.) Recognizing that the twin purposes of a ch. 980 commitment are protection of the public and treatment of convicted sex offenders, and relying on the holding in *Szulczewski* construing a very similar statute, we concluded that a circuit court had the discretion to stay a sentence until the defendant was discharged from his ch. 980 commitment. *White*, 237 Wis. 2d 699, ¶ 11. However, it is apparent that *Szulczewski* did not require a court to stay a new sentence, rather it explicitly permits a circuit court either to impose or to stay the sentence "on the basis of the facts of each case." *Szulczewski*, 216 Wis. 2d 495 at 505. "[A] circuit court . . . must exercise discretion on a case-by-case basis in order to balance and give effect to the goals of both mental health treatment and incarceration." *White*, 237 Wis. 2d 699, ¶ 11. Consistent with both *Szulczewski* and *White*, we conclude here that the circuit court does not, by exercising its

discretion to impose a sentence, eviscerate the effect of a WIS. STAT. § 980.06 commitment proceeding or order.[14]

## E. Statutory dismissal provisions.

¶ 21. Appellants argue that WIS. STAT. §§ 980.06 and 980.065 require dismissal of the petitions based on their return to prison during the commitment proceedings. They characterize the effect of reincarceration as making the petitions moot because their return to DOC custody made the enforcement of the commitment orders impossible. They are mistaken.

¶ 22. " 'An issue is moot when its resolution will have no practical effect on the underlying controversy.' " *State ex rel. Riesch v. Schwarz*, 2005 WI 11, ¶ 11, 278 Wis. 2d 24, 692 N.W.2d 219 (citation omitted). Enforcement of the commitment orders in the cases at bar is not impossible. As discussed, the legislature has anticipated situations in which commitment orders are issued while the subjects of the petitions are in DOC custody. Further, there are only two situations in which

---

[14] Because we conclude that the underlying reasoning in *State v. Szulczewski*, 216 Wis. 2d 495, 574 N.W.2d 660 (1998) and *State v. White*, 2000 WI App 147, 237 Wis. 2d 699, 615 N.W.2d 667 apply here, we do not reach the appellants' arguments pertaining to the frustration of the treatment purposes of DHS custody, nor do we reach their argument that the relevant case law and statutes are inapplicable to their *particular* situations. As we have explained, there is no conflict between the statutory scheme of WIS. STAT. ch. 980 and the appellants' commitment proceedings or orders. Further, we decide cases on the narrowest possible grounds. *See Patrick Fur Farm, Inc. v. United Vaccines, Inc.*, 2005 WI App 190, ¶ 8 n.1, 286 Wis. 2d 774, 703 N.W.2d 707.

the legislature instructs the court to dismiss a Wɪs. Sᴛᴀᴛ. ch. 980 commitment petition. The first is when a court finds there is no probable cause. *See* Wɪs. Sᴛᴀᴛ. § 980.04(3) ("If the court determines that probable cause does not exist to believe that the person is a sexually violent person, the court *shall dismiss the petition.*") (emphasis added). The second occurs if after trial, there is no finding that the person is sexually violent. *See* Wɪs. Sᴛᴀᴛ. § 980.05(5) ("If the court or jury is not satisfied beyond a reasonable doubt that the person is a sexually violent person, the court *shall dismiss the petition* and direct that the person be released unless he or she is under some other lawful restriction.") (emphasis added).

¶ 23.  Had the legislature intended to require dismissal of the petition when the subject of the petition was returned to prison, it could easily have said so. In the context of dismissal provisions, the lack of such a provision is persuasive evidence of intent directly contrary to that argued by appellants. *See Kalal*, 271 Wis. 2d 633, ¶ 44 (This court defers to the policy choices of the legislature and assumes that the legislature's intent is reflected by the language it chose.). In addition, the existence of statutory provisions specifically addressing continued commitment proceedings during the time the subject of the petition has been returned to prison reinforces our construction of these statutes.

## CONCLUSION

¶ 24.  For all the forgoing reasons, we affirm the circuit court.

*By the Court.*—Orders affirmed.